The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the 4th Circuit are admonished to give their attention for the Court is now sitting. God save the United States and this Honorable Court. Good afternoon ladies and gentlemen, or lady and gentlemen, Judge Harris and Judge Shedd and I are glad to be here with you today and looking forward to your argument. The case is 20-4028, United States v. Robertson. And Mr. Hill, you may proceed. Thank you, Your Honor, and may it please the Court. As laid out in the briefs, three fundamental categories of error require a reversal of this case once again. The first one that I'll address is the District Court's imposition of a 480-month sentence resulting from the application of a 187-month upward variance that was both procedurally and substantively unreasonable under United States v. Gall and Provenance and of the progeny of this Court. The two other categories of error that I'll get to involve pretrial rulings around recusal and severance and mid-trial rulings regarding evidentiary matters, jury instructions. With regard to the sentence, in the pre-sentence report, the guideline range was calculated based on an offense level of 38 and a criminal history category of 1 for zero criminal history, giving rise to a range of 235 months to 293 months. That offense level 38 included an 18-level upward adjustment for the magnitude of the loss as well as adjustments for obstruction of justice and no credit for acceptance of responsibility. At sentencing, the District Court upwardly varied, as I mentioned, by 187 months, stating as follows as the basis for a variance in the judgment in this case at Joint Appendix 5403. The Court finds the defendant's use of important relationships, callous disregard on the effect his scheme had on others, and the horrible effect his actions have had on a large number of victims warrants a sentence above the guideline range. Okay, so that's the District Court announcing a decision to upwardly vary. The very next portion of the judgment is the District Court announcing the magnitude of that, the degree of that variance. The Court went on to say the Court also finds that a sentence of 40 years is necessary to protect the public from the defendant and deter others from engaging in similar crimes, implicating statutory sentencing factors under 3553A2B for protection of the public and 3553A2C for deterrence. The fundamental problem that is a procedural and substantive unreasonableness issue is that under this Court's line of authority as stated in United States v. Blue and Province, the District Court must adequately explain the chosen sentence to allow for meaningful appellate review and promote the perception of fair sentencing in order to satisfy the requirements of procedural reasonableness. And as the Court said in Provence, where the variance is a substantial one, and here was 187 months, the appellate court must more carefully scrutinize the reasoning offered by the District Court in support of the sentence. And the farther the District Court diverges from the defendant, the greater the risk of divergence may be. The problem with the District Court's approach here is that no specific explanation was provided by the District Court for the degree of the variance. The two issues stated were protection of the public from the defendant and deterrence. Well, with respect to protection of the public from the defendant, we established at Senate saying that Mr. Robertson had no criminal history. And as Dr. Keller, the clinical psychologist offered by the defendant and accepted as an expert by the district judge testified, based on her evaluation of him, he posed a low risk of recidivating. Counsel, it's Judge Harris. Can I just ask you, I feel that there are sort of two separate arguments you could be making, and I want to make sure I understand which it is. One, and this is sort of what I took away from your brief, was that under Gaul, it's not enough to have justified the 40-year sentence. The District Court has to have sort of expressly recognized the extent of the variance and explained why that particular amount of a variance was necessary in this case. That would be one argument. The other argument would be, look, this is just a really big variance, and the explanation I see in front of me for 40 years is not good enough. So, or maybe you're making both arguments. Yeah, well, Your Honor, I would submit that I'm certainly making the first argument that in order to comply with Gaul, with Blue, with Provence, and even following this court's recent decision in Nance, a particularized explanation of the degree of the variance is required in order to give this court meaningful, an opportunity for meaningful appellate review. Okay, that's what I thought you were arguing. I just want to press on that a little bit. You know, you pointed us to the part in the transcript where the District Court says, I believe the seriousness of the offense here requires an upward variance. Would it satisfy the kind of the rule that you're sketching out if the court had gone on to say, I believe the seriousness of the offense requires an upward variance of roughly 14 years from the top of the guidelines? I recognize the extent of that variance, but I believe it is justified. Is that what you're looking for? That's those are the types of explanations that I submit would be required in order to satisfy the procedural reasonableness requirements, because it's those types of explanations from the district. By the way, this is Judge Shedd, isn't that completely implicit? He didn't say I'm going to depart and I'm just going to pluck 40 years out of the EFA. He picked, he named all the reasons and justified it and then he picked 40. You think he just picked that number at random? Isn't it implicit that he didn't think anything shorter than that would be enough? Isn't that implicit? It may be implicit. It may be what what what somebody reading the transcript may derive. But we submit that that what is required is for the district court to actually explain why it is that 480 months in particular is what is what? No, but let me ask you this. What if the district court had said all the reasons listed, I thought about 25 years, but that's not enough to meet the purposes I have in mind. I thought about 30 years. That's not enough. I thought about 35 and just repeat that and explain. He decided he just made explicit what appears to be implicit, as you say, in the transcript. Well, not not, I wouldn't be satisfied with just that recitation of the hypothetical Judge Shedd that you related because it lacks an explanation for why each of those stages were not adequate, but no greater than necessary. As no, no, no, but it's each time he said, I thought about 25 under these factors that I've laid out, how serious it is just you just reiterate the same factors and say 25 is not enough. Because it's so serious, he would just restate everything he stated and said, for that reason, 25 is not enough. I thought about 30. But for the very same reasons, I gave 40. I'm telling you, that's not enough. That would be enough for you for us to be able to affirm it. I'm not, I'm not sure that that would be enough, Judge Shedd, if I understand, if I understand what you're positing. Because what is required is a sufficient explanation of the district court sentencing rationale, and in this case, segmented down into the steps from, for the rank, the guideline range of 235 to 293. And then moving up to a level 262 to 327 months. And what we submit is that the district court would need to articulate so that this court may review and understand what it is that the district court is doing with that. Mr. Hill, Mr. Hill, this was a jury trial. Can Judge Gibney rely on what he heard as a basis for what what he said in the at the time of sentencing? Can we not imply that? Well, I believe that the district court can rely on on on what he has heard during the trial. Just as in in sentencing, the district judge is bound by formal rules of evidence. But again, it's it's not the input that is that is problematic here. It is not what it is that Judge Gibney considered or didn't consider. The problem is that in the way he announced the sentence, he failed to provide this court with sufficient information to then, as required by Provence, apply that more careful scrutiny, given how far the district court had diverged from the advisory guideline range. Counsel, it's Judge Harris. Let me let me try to get some clarification on something just for myself. I hear what you're saying about, you know, we've heard the explanation is to give us a sufficient basis to review the substantive reasonableness of a sentence. I have to say in reviewing this transcript, I do feel like I understand why the district court sentenced the way he did. I mean, he obviously thought the sentence, the offense was incredibly severe and that the guidelines sort of undercounted the degree of harm that this defendant had done in his community. There's another reason I could imagine, you know, that language from Gall that you might want a district court to expressly acknowledge the degree of the variance, and particularly in a case where the variance is so you know, are we 100 percent clear he got the extent of the variance? But and I could imagine a case where that was a concern. But when I again, when I look at the transcript in this case, it just seems 100 percent clear. I mean, it's the second time around. The district court obviously understood the degree of the variance in this case. And so just I guess I'm coming back to I think some of Judge Shedd's questions sort of what is functionally added here if we make the judge go through the steps of saying, you know, I considered adding 12 months. That didn't seem sufficient for the reasons already given. It's a very serious offense. Then I thought about, I mean, I suppose you would like him to do it year by year. Would it have to be month by month? Like I, I'm just not sure what's added functionally. Yes, Your Honor. I think what's added functionally is, is a tethering by the district court of the information that the district court has gleaned from the trial and from the sentencing proceedings in order to inform where the judge thinks that the sentence will wind up within the guidelines or above. But then it'll tether that information to the actual sentence that's pronounced with the, with the variance through the lens of the statutory factors. In other words, here, the district judge articulated, again, protection of the public and deterrence. Well, you know, we, we, we briefed the issue, both issues, you know, as to protection of the public. We have the unrebutted testimony of Dr. Keller. We have the information from the sentencing guidelines with respect to the sentences reflected in the pre-sentence report handed down for, for instance, the, the, the investment fraud co-defendant Sherman Paul Vaughn. His sentence was 144 months. Well, deterrence was, was obviously a factor necessary for the district court to consider in sentencing Mr. Vaughn for the investment fraud conduct. With respect to the bank fraud counts, defendants, Marlon Horty, Frederick Davis, et cetera, I think the highest sentence that, that they received was 71 months for Frederick Davis, as opposed to- Well, Mr. Hill, let me ask you this. Insofar as that substantive reasonableness argument or disparity argument, Vaughn really isn't similarly situated, is he? I mean, he wasn't involved in the loan fraud. He pled guilty. He agreed to cooperate. I mean, is that enough to distinguish the difference between Vaughn's sentence and your client's sentence? Well, I think if the court looks to the degree with which Vaughn was, was engaged and set up the investment fraud, I see that my time is up. You can finish your answer. Thank you, Your Honor. I think if the court looks at the trial testimony of Vaughn, in which he acknowledged that he set up the Cavalier Union investment vehicle, that he set up the promissory notes themselves in the documentation, that he tasked Mr. Robertson to go out and acquire participants and investors, then they would be more closely situated than they would be different. All right. Thank you, sir. You have some time in rebuttal. Just one question. Mr. Hill, let me try to get through this quickly. Would you agree with me that we could be reviewing a sentence in which there doesn't appear to be any procedural error, and up to the point of putting the number of months in the sentence, everything looks fine? Are you with me in this hypothetical? So you can't point to any flaw in the court's procedure on their analysis up to the point of the imposition of months. Do you understand what I'm saying? I think so, Your Honor. And then do you allow, do you agree with me, or at least there seems to be, then some number, which if it's imposed on an otherwise proper sentence, would just be so far beyond the pale that the sentence would be substantively unreasonable. Do you agree with that? Yes, Your Honor. All right. That being the case, let me ask you this question. By the way, I wanted to ask you, because I'm going to ask the government this same question. And I thought it's fair to let you answer, and then we'll see what they have to say. If, in fact, just hypothetically, I know you aren't conceding anything, but if a reviewing judge or a reviewing court were to believe that everything the judge did up to the point of imposition of months was procedurally and substantively reasonable, what number of months, in your estimation under the analysis, could be added to this sentence? What would be the longest sentence that could be imposed if procedurally and substantively otherwise everything's fine, what would be the outermost number of months under your analysis that could be given in this sentencing? Well, Your Honor, if I understand... I think you do. If everything about the sentencing is fine, and we're already considering the actual number of months, what number of months do you think that could be imposed on an otherwise completely proper sentencing? In this case, what would it be? Well, I would say that something less than 480, for sure. I know that, but I'm asking you to pin it down better, if you can. If you can't, using the analysis we have to apply under the law. I'm just asking, by the way, you don't win or lose your case on this, as far as I'm concerned, but I just want to know your insight into the analysis that has to be applied. And I'm going to ask the government the same thing. Yes, Your Honor, and I would say that, and my apologies for not answering it right away, but to get there would be an incremental, it would be an incremental exercise. Let me say this much, I'm satisfied if you want to get back up and reply and answer it. I'm satisfied. Okay, thank you, Your Honor. Thank you, sir. Ms. Martin. Thank you, Judge. May it please the Court. Merrill Robertson's second trial was fair. His convictions for defrauding investors and financial institutions were, again, supported by overwhelming evidence. And the district judge in this case, having heard the evidence twice, imposed a substantial sentence, but one that was both procedurally and substantively reasonable. Counsel, can I just ask you, what is the government's position on the appropriate sentence for Mr. Robertson? At the first sentencing, you asked for the top of the guidelines. It wasn't really clear to me the government's position at the second sentencing. Do you now think that 40 years is the more appropriate sentence, not 24? I think, you know, the Court made a recommendation at Mr. Robertson's first hearing. And then at the second hearing, I think what the government argued was that if the Court was inclined to impose the same sentence a second time, that it was substantively reasonable. Right. No, I read that. But I guess I'm asking a slightly different question, which is, at the first sentence, first sentencing, the government's position was that 24 years, give or take, would be the appropriate sentence. And I'm just wondering, is that still the government's – is it the government's position now that, look, we think 24 years is right, but we can't say 40 years is substantively unreasonable? Or is the government's position 40 years is the right sentence? So, I think it's correct to say the government did not move for an upward variance in the case, but also acknowledges that reasonableness is a range and not a point. So, whether or not the government or this Court might have found a different – But would you – no, this is Judge Shib. Would you answer our question, though? What's the government's position? Is it that 24 – Is it that the government could go higher within his discretion and it's not reversible? Which is your position? That's the government's position, that it initially recommended 24 years in its estimation, the high end of the guideline range, but that the Court's sentence that it imposed was substantively reasonable. Well, Ms. Hill, from your experience, how does Robertson's sentence compare to other first-time nonviolent offenders with similar criminal offense levels? You have some experience in that area? Well, I think it would be very difficult to compare Mr. Robertson to another first-time fraud offender because, of course, the Court has to conduct an individualized assessment of each defendant. And here, that's exactly what it did. It, throughout the sentencing hearing, considered factors that were already accounted for in the guideline range to support its sentence outside of the guideline range. So, for example, Judge Floyd, the Court noted that the guideline range, of course, in most fraud cases, are driven by the loss amount under 2B1.1. And that, and so Mr. Robertson, level enhancement for the loss in this case, but the Court noted that that's just a number and it doesn't account for what that loss meant to the person who lost it. So it talked about, right, that, you know, a $10 million loss to Bank of America, who might not be affected by that level of loss, is very different from a $100,000 loss to somebody who, that was their entire life savings. And the Court made clear that that, in particular, was an aggravating fact of this case, that the loss was spread across more than 60 people. And for most of them, it changed the outlook of their entire life. The Court also noted that the loss table doesn't account for the kind of money that's stolen. So, in another fraud case, right, you could have the same loss amount, but, you know, it was just somebody lost their salary. Here, Mr. Robertson, particularly, yes, Judge Harris. I'm sorry, Counsel, I appreciate the explanation and I thought the District Court was quite clear in sort of the Court's response to the nature of these offenses and how much it had harmed the victims. I guess I'm not trying to give you a hard time about the government's position, it's just that under Howard, one of the factors we look at in determining whether a sentence is substantively reasonable, and it's absolutely not dispositive, but we do care if the District Court has varied a lot or at all above what the government is asking for. Sort of on the theory that, look, the government sees a broad sweep of these cases and it comes into court and it has a good sense of where this case is in the range. And so, just sort of going back to Howard, how troubled, how concerned should we be that it sounds, from what you're saying today, that although the government thought 24 years would be a fair sentence, and, you know, it has that kind of broad perspective on a range of cases, the District Court varied so substantially over the government's recommendation? So, I don't think that that should give the Court pause because I think this Court's jurisprudence makes clear that, again, even if this Court, even if the government might find a different sentence reasonable, that that is not a sufficient justification. Right. I'm asking you what I should do with the fact that the government found a different sentence reasonable. I totally understand that, and we say this in Howard, the mere fact that we would come up with a different sentence counts for nothing. But the fact that the government came up with a much lower sentence is supposed to count for something. So, I guess I'm just asking you to tell me how to factor that in under the Howard analysis in this case. Yeah, and again, I think the answer to that is that reasonableness is a range, and it's not a point. Now, is there a significant range between 24 years and 40? Sure. But the question is, did the Court have a reasoned basis for exercising its own legal decision-making authority? And I think it did. I think it's clear that the reasons for imposing that sentence were that it had sufficient reasons to impose that sentence. Ms. Martin, this is Judge Shedd. Let me ask you this, a couple questions. First, didn't the District Court believe it was at least trying to treat the two defendants the same way because he talks of doubling the bottom of their guideline range in each case. Isn't that correct? Yes, that's correct. He did. So, at least he tried to come up with some rationale for what he did. Now, I want to ask you sort of the line that I asked Mr. Hill. You do agree with me, I'm asking if you agree with me, that a sentence supposition could be procedurally and substantively reasonable through the whole process down to the number of years or months imposed. Do you think that then at that point, just looking at the number of months imposed, that by itself could make the sentence substantively unreasonable? No other errors, just the actual number of months. Could that make a sentence substantively unreasonable in and of itself? If the number of months was not... I'm just asking, is that possible? It's possible if the number of months, if there's not a... All I need is a yes or no. You think it can, right? For instance, let's say, just in this case, if he got to the end of this sentencing and you would argue there are no errors to that point, and he said I'm sentencing you to 150 years, that would make this substantively unreasonable, don't you think? 150 years in this case, I think, would be substantively unreasonable. Yes, John. Okay. All right. So let me ask you, what do you think is under the facts of this case and under the sentencing of this case, it's the same question that I asked of Mr. Hill, what does the government think is the maximum sentence the court could have given in this case, under these facts, under this sentencing procedure? I think the court could have substantively justified a sentence higher than it imposed. But I certainly think... I know, I'm asking, but the same thing I asked. What number do you have? Under your analysis, do you have a number? I don't have a number. You're out of those limits? I know that there are cases where judges have imposed on cases of first-time fraud defendants a sentence of 100 years, and that was in the Okin case. So I... Wait a second. Wait, wait, wait, wait. Are you saying in this case you think the government's position is 100 years in this case? I'm certainly not saying that the government's position is 100... But I'm asking you about... No, no, I'm asking you about this case. I just want to understand your analysis. Have you done the analysis in your own mind or preparation to think of what number might be the outermost point at which the government would have to say to us, we think that in and of itself is unreasonable? Well, candidly, Judge, I haven't thought about what the outermost limit would be because I don't get to impose the sentence, but I do... But you get to answer my question. But you get to answer my question. Well, I mean, I think that my answer is I think that something... that the court could have imposed something more than this. The court could have imposed 50 years, and I think that that could have been a substantively reasonable sentence in this case. But I also think that a sentence of 40 years is substantively reasonable, and it's... No, but... No, no, I can cut this short, I think. So you think that the court could have imposed a number greater than 40 years in this case without making... It's substantively unreasonable, correct? That is correct. Ms. Hill, let me ask you this question as a follow-up to Judge Harris and Judge Schitt. The problem that we face is you guys put us in knots. Our goal is to try to affirm the district court if we possibly can. And what we're trying to figure out is where is that range short of 40 that is reasonable? I mean, like, whether 35 would have been reasonable, again, I think this court's jurisprudence is clear that it's reasonable within the range. So there isn't an exact number that I think we could all agree on. Well, this... 38 years, that is the perfect number that is supported by all of the evidence in this case and is a sufficiently reasonable sentence. But I think the question is, did the trial judge have a sufficient basis for the sentence that it imposed? And I think it is clear on the record that it did. Counsel, can I take you back to Judge Shedd's question about the part in the... I think it's the recusal hearing where the judge suggests that the way he got to 40 years was by doubling the bottom end of the range. And you apparently read the record the same way. We think that's how he picked these sentences. He doubled the bottom of the range for each defendant. Is that a good way to pick a sentence under 3553A? I'm not... I was sort of surprised to see you embrace that. I think if we had a case where the district court, it's clear that he varied upward by 14 years by doubling the bottom end of the range without actually considering whether the product of that equation was suitable under 3553A, I think we'd maybe have a problem. Well, I think that the thing is, is that what is clear from the record and what is clear from this sentencing hearing that lasted, you know, 166 pages of transcript is that the court just didn't cavalierly say, OK, 235 times 2, there's my sentence. That's not what it did. It absolutely... Well, I thought you told Judge Shedd that that is what it did, that it treated the two defendants the same way because it doubled the bottom range for both of them. I mean, the judge does sort of suggest that that was the method in the recusal hearing. Well, I think what I was acknowledging was that the outcome for both of them, 144 was the doubling of the bottom of the curve, but not that that's how he... ...did to arrive at the sentence that he imposed. And I think it's clear from the record that that's not what he... Well, if he did what Judge Harris is suggesting to you and which is in the record, isn't that tantamount to flipping a coin? I mean, no. Again, I think it's clear that that's not what he did. It's a comment that he made in the recusal hearing, but in the course of the sentencing hearing, in this case, he analyzed every single statutory sentencing actor. He actively engaged throughout the sentencing hearing with the parties, with witnesses, with victims. He actively engaged with the defendant during his allocution. He addressed the defendant's particular arguments that were aimed at a guideline range sentence all before he acknowledged what the guidelines were and then indicated that an upward variance was warranted. Isn't your answer that he did not use that doubling as justification for what he did? He explained that, as you were saying otherwise, but when he's being questioned about recusal, he points out he is not punishing this person or is not treating Mr. Robertson differently because what he's done is basically treated both of them equally on that scale. Isn't that what that's all about? I think when I was responding to your question, Judge said... But I'm asking, isn't that what that's all about, his comment about a double both of them? Wasn't that an effort to show that he did not have any animus toward Mr. Robertson? Am I wrong? I think it is right to say that it was his effort to show that the extent of the variance was comparatively the same for both of them. In an effort to disprove a claim  That's correct, Judge. Thank you. Anything else? I have nothing. If the court has no other questions on this topic or any of the other issues raised, the government would rest on its papers. Thank you, ma'am. Mr. Hill, you have some reply. Thank you, Your Honor. Let me touch briefly, if I may, on the sentencing issue and the recusal issue as they intersect. It was just touched on. What we have in this case is the procedural and we believe substantive unreasonableness of the sentence intersecting with the appearance of impropriety or suspicion of partiality issue that we raised in the papers. And so it's a two-fold problem. Because the district court, in our view, didn't sufficiently explain the basis for the 40-year sentence, it appears to be the same sentence that was handed down the last time after a different trial. What we're looking at now in line with Hathcock v. Navistar is this. Under that case, the court stated the question is not whether the judge is impartial in fact, it's simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his impartiality on the basis of all the circumstances. And since we have a situation here as outlined in the brief with the mid-first trial revocation of Mr. Robertson's bond with the comments regarding his character that made its way into the papers, the 40-year sentence after the first trial which was a challenge for procedural and substantive reasonableness as well in the first appeal and now the second trial with the exact same result and an insufficient explanation for the degree of the variance. Mr. Hill, let me ask you this. If I remember the record correctly, the judge said something like this. I've been on the bench about eight years and this is the most explanation I've ever given in a sentence. Now let me ask, I think I'm correct on that. If that's the case, do you think the judge in imposing this sentence is incapable of understanding the law as to what he's supposed to do or is he just incapable of expressing himself? Which do you think it is? Your Honor, I don't believe it's either. I don't, I wouldn't call Judge Gibney incapable of understanding the law or incapable of expressing himself. And I don't know, I don't know why the district judge in this case articulated the sentence and didn't articulate aspects of the sentence in the way he did. I understand that. I know this, but you agree with me, don't you? That he said something basically like this. This is the most I've ever explained a sentence. Didn't he say that? Do you remember? I don't recall specifically, but what I would... Let me say, just take it then as a given for my question. If the judge goes, this is the most I've ever explained a sentence, then you would think while he said a lot, he didn't know what he was supposed to say to support the sentence. Well, again, all I could say, I'm not a mind reader, I wouldn't presume to read the mind of a district judge, but all I could say... You don't have to be. I think I'm quoting pretty much directly from the record. You don't have to be a mind reader. Yes, Your Honor, but in terms of taking the next step and assessing why it was that the district judge didn't comply with what we believe the requirements of Blue and Provence and Gold to be, I don't know. What I submit to the court is that in our view, he did not and that rendered me... I know your argument is he didn't. Have you come up with a number for me that you think is the outermost number that could have been applied in this case if everything else is fine, is analysis, is factual determination. I know you don't agree with that, but if you accept that for purposes of my question, then do you have a comment for us on what the outermost limit the government had a little bit of a problem? Do you have one? I do not, Your Honor, and here's why. As an attorney, I don't have to make those calls. District judges do and they're very difficult. I know this, but if I ask you to, you should. If you say you don't, you don't want to. See, I'm not asking you to take the client down. I'm asking you under your analysis of the law and what he said, what do you think the number should be? Is it the top end of the guidelines? Do you think under these facts he could have varied at all above the top end of the guidelines? Or you don't want to answer that question? Your Honor, what I would say is that we submitted at the sentencing hearing that Mr. Robertson would accept a high end of the guidelines sentence. I believe that's what we submitted. That's a different question I'm asking you. I'm sorry. I want to follow up on this question and I want to be clear. My question is only about procedural reasonableness. I had sort of assumed your position was had your client been sentenced within the guidelines, this explanation would have been procedurally sufficient. But is that not correct? Your Honor, I think that given the teachings of Provence with the greater explanation needed for a greater variance of the guidelines, I would agree with that. Yes, Your Honor. If it had been just one month over, would this explanation have been sufficient procedurally? I'm not talking about the substantive reasonableness. But would this explanation have been sufficient procedurally to support a very small variance? Your Honor, I guess I would say that in my view, it probably would be, particularly since the probation officer noted in paragraph 130 of the PSR that the probation officer had not identified any factors that would warrant a departure from the applicable sentencing guideline range. So if the actual sentence imposed by the defendant were only a matter of a one-month variation from what it was that the probation officer calculated and recommended and in line with what the government had sort of offered up at the first trial and what the defendant himself through counsel had offered to the court in this case, then yes. Okay, so it's not like an on-off thing. That's helpful. So the problem for you is that this explanation doesn't match up with a variance this large, but not that it couldn't have supported a smaller variance. Yes, Your Honor. Thank you. Judge Shedd, do you have any further questions? I do not. I do not. Thank you. Judge Harris? Any further questions? I want to thank Ms. Martin and Mr. Hill for the argument. We appreciate your candor and as I said, the argument here today. As you know, normally we would come down and shake your hand and greet you if we were in Richmond, but unfortunately we're not there, although we'd love to be. But nevertheless, I understand that we very much appreciate your service to the court system. The case is submitted and the court will take a brief recess to conference this case and then reconstitute the panel. The Honorable Court will take a brief recess.
judges: Henry F. Floyd, Pamela A. Harris, Dennis W. Shedd